**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY BARATTA, | Civil Action No. 10-1020 (MLC) |
| Plaintiff, | **O P I N I O N** |
| v. | |
| CITY OF NEW BRUNSWICK, et al., | |
| Defendants. | |

**APPEARANCES:**

JEREMY BARATTA, Plaintiff pro se
P.O. Box 6944, Freehold, New Jersey 07728

**COOPER**, District Judge

Plaintiff, Jeremy Baratta, is a pro se litigant. Based on his affidavit of indigence, the Court will grant his application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the Complaint.

The Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. The Court will dismiss the federal claims, and decline to exercise jurisdiction over the state law claims.

### I.  BACKGROUND

Baratta brings this civil action against the defendants, City of New Brunswick; James Cahill, Mayor of New Brunswick; New

Brunswick City Council; New Brunswick City Council members John Doe (1-5); New Brunswick Parking Authority ("NBPA"), John Doe (1-5); NBPA Commissioner; Jane Doe, NBPA security officer; Antoine Johnson and Shon Grandberry, NBPA employees; New Brunswick Municipal Court; Judge Earl Ronald Wright, New Brunswick Municipal Court presiding judge; Judge Philip A. Borow of New Brunswick Municipal Court; Kimberly A. Milligan, Court Administrator of New Brunswick Municipal Court; Jane Doe (1-10), employees of New Brunswick Municipal Court; and Jon Does (1-30).  (Compl., Caption & Parties.)  The following allegations are from the Complaint, and accepted for purposes of this screening only.  The Court makes no findings as to the veracity of Baratta's allegations.

Baratta alleges that, on or about October 25, 2007, his car was legally parked in a metered space in a public lot operated by the City of New Brunswick.  A valid New Jersey Handicap Parking placard was displayed from the front windshield mirror in his car.  But when Baratta returned to his car in the evening, he noticed a "payment envelope" placed under his windshield wiper for having parked "overtime".  The notice issued by the NBPA stated that a complaint would be issued for the alleged parking violation unless the fine was paid.  (Compl., ¶¶ 2, 3.)

Baratta promptly called the NBPA at the number listed on the notice.  Defendant Jane Doe, NBPA security officer responded, and advised Baratta to contact the NBPA during business hours to complain about the ticket.  Baratta called the NBPA "within the

2

next day or so." Baratta spoke with defendant Johnson and told Johnson that any citation to Baratta's car would be unlawful because it was a properly designated handicapped vehicle that was parked in a metered space for less than 24 hours, as permitted under New Jersey law. Baratta also informed Johnson that should a complaint or citation be issued, such action would constitute a tortious act and legal action would be taken by Baratta. (Compl., ¶¶ 4-6.) Baratta states that Johnson was the spouse of the Clerk of New Brunswick Municipal Court. (Compl., ¶ 7.)

On February 14, 2008, Baratta received a Complaint/Summons issued by New Brunswick Municipal Court in an envelope from the NBPA. He states that the Complaint/Summons was issued well after the thirty day statute of limitations for the initiation of a complaint alleging a motor vehicle violation in New Jersey. (Compl., ¶¶ 8, 9.)

Baratta called the Municipal Court on May 22, 2008, and sought an accommodation for a hearing under the Americans with Disabilities Act. Baratta states that the Clerk told him no accommodations were available and scheduled a hearing for June 11, 2008 at 8:45 a.m. Baratta states that he was unable to attend the hearing, due partly to his disability, so he attempted to call the Clerk of New Brunswick Municipal Court on June 10, 2008. Baratta was unable to reach the Clerk and left a message that he wanted to adjourn the matter so that he could submit an affidavit

3

in his defense.  Baratta also asked that the Clerk return his call to confirm receipt of this request.  (Compl., ¶¶ 10, 11.)

On or about June 25, 2008, Baratta received a notice that his driver's license would be suspended for failure to respond to the parking violation complaint.  Baratta promptly called the Clerk of New Brunswick Municipal Court, who relisted the hearing for July 2, 2008.  Baratta alleges that he was led to believe that the notice of suspension was now null and void, and no further action was required by Baratta or the Municipal Court.  (Compl., ¶ 12.)

Again, on July 1, 2008, the day before his hearing scheduled for July 2, 2008, Baratta attempted to speak with the Clerk by telephone.  He left a message that he wished to make a defense by affidavit and asked that the Clerk call back to confirm his message.  He did not hear from the Clerk or the Municipal Court.  (Compl., ¶ 13.)

On July 26, 2008, Baratta was stopped by police while driving a non-owned vehicle.  The police officer informed Baratta that his driver's license was suspended and then issued a Complaint/Summons for driving while suspended, driving without a valid license, driving in excess of the posted speed and operating a vehicle with a non-functioning lamp.  At a hearing on these violations, and represented by counsel, Baratta pleaded guilty to operating a vehicle with a non-functioning lamp, and the remaining charges were dismissed.  Baratta paid the imposed fine and costs.  (Compl., ¶ 14.)

On Monday, July 28, 2008, Baratta reached the Clerk of New Brunswick Municipal Court by telephone, and asked that he be placed on the next calendar list for the parking violation.  The Clerk informed Baratta that his hearing was rescheduled for July 30, 2008 at 8:45 a.m., and that she would personally give Baratta's case to the judge.  On July 30, 2008, at 8:30 a.m. and again at 9:00 a.m., Baratta left telephone messages with the Clerk to have his case marked for "ready-hold" for 9:30 a.m.  Baratta arrived at Municipal Court at 9:30 a.m. to a full courtroom already in session.  Baratta's case was eventually called at 10:30 a.m.  (Compl., ¶¶ 15-17.)

Baratta alleges that Judge Borow was hostile to him and asked him about his medical condition and disabilities, but Baratta declined to answer what he deemed to be "offensive, prying and embarrassing questions."  (Compl., ¶ 17.)  Judge Borow told Baratta that his case would not be reached that day, although Baratta noticed that the NBPA employees were in the courtroom.  Baratta alleges that the judge's action was purposeful and vindictive "so as to prolong the illegal license suspension that plaintiff was being subjected to by the court."  As Baratta needed to have his license restored, he then told the court that he wished to plead "no contest" to the charge and be sentenced.  The judge allegedly told Baratta that such a plea was not valid in New Jersey, and he would not accept a guilty plea from Baratta.  (Compl., ¶¶ 17-19.)

5

After being dismissed by the judge, Baratta went to the "violations clerk" window to pay the fine, but the clerk would not take his payment.  Baratta then went to the Superior Court Trial Court Administrator's Office across the street, and at that point the Municipal Division Manager's Office intervened to permit Baratta to pay the fine and have his license restored that day.  (Compl., ¶¶ 20, 21.)

On or about August 15, 2008, Baratta filed a certification in New Brunswick Municipal Court requesting a new trial, or alternatively, for post-conviction relief, based on his defense that the parking violation lodged against him was unlawful.  His application for relief has not been acknowledged.  (Compl., ¶ 22.)

Also on August 15, 2008, Baratta filed an appeal to New Jersey Superior Court, Middlesex County.  He sought indigent status, which was rejected, without assignment of counsel, at a hearing held on October 14, 2008, with the prosecutor present. Baratta appealed this decision to deny indigent status to the New Jersey Appellate Division, which also denied Baratta's request for pauper status.  Baratta alleges that, without money or legal resources to continue his legal challenge, compounded by his undefined "medical condition", he was left in an "unconstitutional 'catch-22' by the courts."  (Compl., ¶ 23.)

Baratta alleges that the service of the parking violation complaint by the NBPA, as a party having a direct interest in the

litigation, is a violation of the Rules Governing the New Jersey Courts regarding proper service of complaints.  Thus, he asserts that New Brunswick Municipal Court never had personal jurisdiction over him, and all subsequent acts were unlawful.  He also asserts that Judge Borow violated his right to a speedy trial as provided under the Sixth Amendment.  Further, the Municipal Court's failure to address Baratta's August 2008 submission was a continuing act of unlawful and tortious conduct.  (Compl., ¶¶ 28-30.)

Baratta also makes unrelated allegations as to persons not named as defendants in this matter.  For instance, he alleges that, on or about June 11, 2003, the Associated Press published an article concerning an unlawful fine imposed by Municipal Court Judge Ralph F. Stanzione, for conduct involving a citizen attempting to pay a parking ticket by mail.  Baratta alleges that further information on this incident is not available to him.  Baratta also alleges that he once filed a complaint against Judge Stanzione and defendant Milligan for an unrelated incident.  The complaint allegedly resulted in judicial discipline being imposed against Stanzione, but he is unaware of any action taken against Milligan.  Baratta states that Stanzione retired in November 2005 and now practices law in Florida.  On July 30, 2008, while waiting to be called for trial on his parking violation, Baratta asked for discovery related his 2005 complaint, and was told that none existed, leaving him with no means to locate defendant

Grandberry. It appears that Baratta may be asserting that this violates his Sixth Amendment right to confront witnesses against him, as well as for the purpose of obtaining compulsory process to compel testimony of witnesses. (Compl., ¶¶ 24-27.)

Baratta now asserts these claims: Count One, deprivation of rights under color of law in violation of 18 U.S.C. § 242; Count Two, engaging in illegal police pattern and practice conduct in violation of 42 U.S.C. § 14141; Count Three, violation of the Americans with Disabilities Act, 42 U.S.C. § 12101; Count Four, conspiracy to violate civil rights in violation of 42 U.S.C. § 1983; Count Five, violation of his First Amendment rights; Count Six, violation of his Fifth Amendment right against self-incrimination; Count Seven, violation of his Sixth Amendment right to a speedy trial and to confront adverse witnesses against him; Count Eight, violation of the New Jersey Civil Rights Act; Counts Nine through Eighteen, asserting common law tort claims of unlawful invasion of privacy, malicious prosecution, abuse of process, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring, failure to train, failure to supervise, and civil conspiracy. Baratta seeks monetary damages in the amount of $1 million.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action in which a litigant is proceeding in forma pauperis, to identify cognizable claims and to sua sponte dismiss any claim

8

that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

The Court, in determining the sufficiency of a pro se complaint, must construe it liberally in the plaintiff's favor. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  But the Court need not credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), revised the standard for summary dismissal of a Complaint that fails to state a claim.  The issue therein was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding his treatment during detention which, if true, violated his constitutional rights.  Id.  The Court examined Federal Rule of Civil Procedure 8(a)(2), which

provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1] Citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-50 (citations omitted).

The Court further explained that

> a court . . . can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-

---

[1] Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed.R.Civ.P. 8(d).

>pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

To prevent summary dismissal, civil complaints must allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  Iqbal emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible. Id. at 1949-50; see Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Iqbal thus provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  A district court must now conduct the two-part analysis set forth in Iqbal:

>First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a

11

> context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.  But even after Iqbal, the sufficiency of a pro se pleading must be construed liberally in a plaintiff's favor.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  ANALYSIS

**A.  Judicial Immunity**

A judicial officer in the performance of his or her duties has absolute immunity from suit.  Mireless v. Waco, 502 U.S. 9, 12 (1991).  This immunity extends to judges of courts of limited jurisdiction, such as New Jersey municipal court judges.  Figueroa v. Blackburn, 208 F.3d 435, 441-43 (3d Cir. 2000).  Further, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."  Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).  Judicial immunity serves an important function in that it furthers the public interest in judges who are "at liberty to exercise their functions with independence and without fear of consequences."  Pierson v. Ray, 386 U.S. 547 (1967).  Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.  Mireless, 502 U.S. at 11.

There are two circumstances where a judge's immunity from civil liability may be overcome.  The exceptions to the judicial immunity doctrine are narrow in scope and infrequently applied. The first exception is where a judge engages in nonjudicial acts, i.e., actions not taken in the judge's judicial capacity.  Id.;

12

see Figueroa, 208 F.3d at 440. The second exception involves actions that, though judicial in nature, are taken in the complete absence of jurisdiction. Mireless, 502 U.S. at 11; Figueroa, 208 F.3d at 440. Neither exception is applicable here.

Baratta's claims against Judge Borow involve his actions in the Municipal Court hearing, which are acts taken in the judge's judicial capacity. Moreover, Baratta alleges no set of facts to support a claim against Judge Wright. Therefore, the Complaint insofar as it asserts federal claims will be dismissed as to Judge Borow and Judge Wright. Iqbal, 129 S.Ct. at 1949-50.[2]

**B.   New Brunswick Municipal Court**

The Eleventh Amendment provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." Generally, a suit by private parties seeking to impose a liability that must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless that immunity is waived by the state itself or by federal statute. See Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type

---

[2] Baratta asserts no claims against Judge Stanzione, since he does not name him as a defendant, and only refers to an admittedly unrelated state court action against him.

of relief sought.  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).  In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983.  Will v. Mich. Dep't of State Police, 491 U.S. 58, 64, 70-71 & n.10 (1989); Grabow v. So. State Corr. Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (New Jersey Department of Corrections not a person under § 1983).

 Baratta asserts an unspecified claim against New Brunswick Municipal Court.  This Court finds that New Brunswick Municipal Court is protected by the Eleventh Amendment.  Municipal courts provide judicial services, an area in which local governments are typically treated as "arm[s] of the State" for Eleventh Amendment purposes, Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280 (1977), and enjoy the same immunity from suit as states.  See, e.g., Callahan v. Philadelphia, 207 F.3d 668, 670-74 (3d Cir. 2000) (municipal court is "arm of the State" entitled to Eleventh Amendment immunity); Kelly v. Mun. Courts, 97 F.3d 902, 907-08

(7th Cir. 1996) (same); Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995) (same).[3]  Therefore, this Court will dismiss the Complaint insofar as it asserts federal claims against New Brunswick Municipal Court, as it is immune from suit under the Eleventh Amendment.

**C.   The Remaining Federal Claims**

The Complaint fails to allege facts sufficient to support the following claims, and such claims rest solely on threadbare allegations and conclusory statements that fail to satisfy the pleading requirements under Rule 8, see Iqbal, 129 S.Ct. at 1949-50: Count Two, engaging in illegal police pattern and practice conduct in violation of 42 U.S.C. § 14141; Count Three, violation of the Americans with Disabilities Act, 42 U.S.C. § 12101;[4] Count

---

[3] New Jersey recognizes municipal courts as part of the state-wide judicial system and the judicial power exercised by municipal court judges is the judicial power of the State. See Knight v. City of Margate, 86 N.J. 374, 385 (1981).  New Jersey statutes provide a municipal court with jurisdiction over matters that are in no sense municipal, namely, handling the violation of various state laws and certain criminal offenses upon waiver of indictment and trial by jury.  See N.J.S.A. §§ 2B:12-17, 2B:12-18.  Municipal courts are courts of record, and appeals from judgments and orders of municipal courts are taken to New Jersey Superior Court.  State v. Garcia, 297 N.J.Super. 108, 123 (N.J. Mun. Ct. 1996).  New Jersey statutes establish that the State retains direction and control over municipal courts.  N.J.S.A. § 2B:1-1.  Furthermore, "[a]dministrative control of municipal courts rests in the Supreme Court, which has directed the Chief Justice to designate an Assignment Judge for each vicinage responsible for administration of all courts therein, including municipal courts."  State v. Garcia, 297 N.J.Super. at 124.

[4] Baratta does not identify or describe the disability that would qualify him for protection thereunder.

Four, conspiracy to violate civil rights in violation of 42 U.S.C. § 1983; Count Five, violation of his First Amendment rights; Count Six, violation of his Fifth Amendment right against self-incrimination;[5] and Count Seven, violation of his Sixth Amendment right to a speedy trial.

As to the speedy trial claim, Baratta has not exhausted such claim in state court, nor do the allegations set forth in the Complaint give merit to such a claim.  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial".  U.S. Const. amend. VI.  The right to a speedy trial is "fundamental" and imposed on the states by the Due Process Clause of the Fourteenth Amendment.  Kloper v. North Carolina, 386 U.S. 213, 223 (1967); see Barker v. Wingo, 407 U.S. 514 (1972).  There are four factors to be weighed and balanced to determine whether the Sixth Amendment's guarantee of a speedy trial has been violated:  (1) the length of the delay; (2) the reason for the delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant.  See id. at 530; see also United States v. Dent, 149 F.3d 180, 184 (3d Cir. 1998).

None of these enumerated factors is singularly regarded as either a necessary or sufficient condition to finding a violation

---

[5]  There is nothing asserted in the Complaint that shows that statements made by Baratta were used against him in his Municipal Court hearing.

16

of a right to a speedy trial. Rather, they should be treated as related factors to be considered with such other circumstances as may be relevant. See Barker, 407 U.S. at 533. However, it is the length of the delay that triggers an inquiry into the other factors. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530. Delays of one year trigger an analysis into the other Barker factors. Doggett v. United States, 505 U.S. 647, 652 n.1 (1992).

Baratta's speedy trial claim fails because it is not related to a criminal prosecution but merely a parking violation. Also, the delay in holding a hearing was less than a year in duration, and Baratta himself was responsible for the delay by requesting adjournments. Finally, Baratta was not detained for any period of time while awaiting his hearing.

The Court also notes that Baratta never asserted his speedy trial right at any stage in his parking ticket proceedings, and he has not exhausted his state court remedies in asserting this claim. Therefore, Baratta is not entitled to relief on this claim, and such claim insofar as it is brought under federal law must be dismissed for failure to state a cognizable claim.

This Court also finds that the claim under 18 U.S.C. § 242 is not actionable here. Statutes, such as 18 U.S.C. § 242, establishing criminal liability for certain deprivations of civil

rights do not give rise to a civil cause of action.  See Figueroa v. Clark, 810 F.Supp. 613, 615 (E.D. Pa. 1992); U.S. v. City of Philadelphia,, 482 F.Supp. 1248 (E.D. Pa. 1979).  Therefore, this claim must be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii).

The Complaint asserts claims against defendants New Brunswick Mayor James Cahill, New Brunswick Council, and Council members (Doe defendants), based on supervisor liability that must be dismissed.  Government officials generally may not be held liable for the unconstitutional conduct of subordinates under a theory of respondeat superior.  See Iqbal, 129 S.Ct. at 1948; Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for municipal "person" under 42 U.S.C. § 1983).  The Supreme Court holds that "[b]ecause vicarious or supervisor liability is inapplicable to Bivens[6] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 129 S.Ct. at 1948.  Thus, a government official is liable only for his or her own conduct.  The Court rejected the contention that supervisor liability can be imposed where the official had only "knowledge" or "acquiesced" in a subordinate's conduct.  Id. at 1949.

There are no allegations here of any wrongful conduct as to defendants Cahill, New Brunswick Council and its members, other

---

[6] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

18

than their supervisory capacity over the NBPA.  Accordingly, any § 1983 claim must be dismissed as against these defendants.  Moreover, the claims asserting negligent hiring, failure to train, failure to supervise, and civil conspiracy (Counts Fifteen, Sixteen, Seventeen, and Eighteen) to the extent they may be brought under federal law must be dismissed because Baratta alleges nothing more than mere conclusory statements of liability with no factual support to meet the pleading threshold as set forth in Iqbal.  129 S.Ct. at 1949-50.

**D.    State Law and Common Law Claims**

Because the Court has dismissed all asserted federal claims, the Court will decline supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c)(3), over all remaining state and common law claims.

### IV. CONCLUSION

All of the federal claims will be dismissed.  The remaining state law claims will be dismissed without prejudice to Baratta to reinstate them in state court, as the Court declines to exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c)(3).  The Court will issue an appropriate order and judgment.

　　　　　　　　　　　　　　　　　　s/ Mary L. Cooper          
　　　　　　　　　　　　　　　　**MARY L. COOPER**
　　　　　　　　　　　　　　　　United States District Judge

Dated:    November 23, 2010